**William F. Dewey, CJA Attorney for Petitioner**
**1150 P Street**
**Anchorage, Alaska 99501**
**907-272-3740**
**deweyfred81@hotmail.com**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| **SUZETTE M. WELTON** ) | Case No. 3:12-cv-00137 TMB-DMS |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | |
| ) | |
| Joe Schmidt, Commissioner, ) | |
| Department of Corrections, ) | |
| State of Alaska, | |
| ) | |
| **Respondent.** ) | |
| ) | |

**OPPOSITION TO RESPONDENT'S MOTION TO DISMISS CLAIMS FOR FAILURE TO EXHAUST CLAIMS IN ALASKA COURTS**

**I. INTRODUCTION:**

Petitioner, Suzette Welton, through her CJA counsel has filed a "mixed petition" for writ of habeas corpus pursuant to 28 U.S.C. 2254 at Docket 22. As discussed in that amended petition, she will seek a stay and abey order of this petition based on the fact that she raised both unexhausted and exhausted claims and that all claims should be fairly adjudicated in State Court before proceed on the exhausted claim.[1] The Respondent has moved to dismiss

---

[1] Petitioner will not address the stay and abey issue in this pleading, but will address that through motions filed after the litigation of the issue raised regarding the exhausted claim which is asserted by the Respondent in its motion to be unexhausted for failure to raise Federal authority in the state courts regarding the first allegation. Petitioner intends to file a motion to stay and hold this case in abeyance

this "mixed petition in its entirety claiming that Ms. Welton's attorneys failed to argue or cite to Federal Constitutional law in her Petition for Hearing. As set out here, Ms. Welton specifically cited to Federal Constitutional standards, Federal caselaw, and exhausted her remedies in the State courts of Alaska through the Alaska Supreme Court as to Ground 1. The respondent asserts that as to the first claim in her petition, Ms. Welton only cited to state law and did not mention or raise Federal law or precedent in her Petition for Hearing. [Exhibit 1 to Respondent's Motion to Dismiss]. In the motion, the Respondent cites to one case in support of its position, and fails to recognize the distinguishing features of that precedent and the United States Supreme Court cases discussing exhaustion, and further, does not discuss U.S. Supreme Court precedent raised and discussed, specifically raised in Ms. Welton's Petition to the Alaska Supreme Court.

**II. THE FACTUAL FINDINGS OF THE ALASKA COURTS THAT FAILURE TO CROSS-EXAMINE JEREMIAH WELTON REGARDING HIS RECREATIONAL USE OF OVER THE COUNTER SLEEPING AIDS WAS "TACTICAL" AND THEREFORE NOT PREJUDICIAL WAS CHALLENGED AS "OBJECTIVELY UNREASONABLE" PURSUANT TO THE DOCTRINES OF FEDERAL LAW IN MS. WELTON'S PETITION FOR HEARING AND AGAIN UNDER 28 U.S.C. 2254(d)(2) IN HER PETITION TO THIS COURT.**

---

pending the outcome of the state case raising the other three issues. This memorandum will address whether the first claim is exhausted and whether the petition in this case is properly deemed a "mixed petition". Once this court rules that the first claim is exhausted, Petitioner intends to file a motion pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed. 2d 440 (2005). Since the other three claims involve ineffective assistance, failure to adequately cross-examine, and the <u>cumulative</u> prejudice to the Petitioner, all claims should be reviewed once the state court rules on the three exhausted claims. It is clear that these interrelated issues would be more efficiently and appropriately reviewed after full litigation of all claims both as a matter of comity and judicial economy. This memorandum will address the first claim which Petitioner claims was exhausted through a Petition for Hearing to the Alaska Supreme Court and the State claims that Petitioner relied solely on the State precedent.

Pursuant to 28 U.S.C. 2254(d) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court cannot be granted on any claim that was adjudicated by a State court, unless the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the record of evidence presented in the State court proceedings. 28 U.S.C. 2254(d)(2).  This section 2254, and the claim that the State court rulings on Ground 1 of Ms. Welton were objectively unreasonable are the basis of the claim in her 2254 Petition <u>and</u> were the basis of her Petition for Hearing at the Alaska Supreme Court. [Exhibit 1 to Respondent's Motion, Petition for Hearing, at 1-2, 2-11].

The Respondent states correctly in regard to the exhaustion requirement that a petitioner must "fairly present" his federal claim in state court, including the state's highest court, citing to <u>Baldwin v. Reece</u>, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004).  Further, the standard for fairly presenting a federal claim in state court is correctly stated as, "'In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution, <u>or</u> <u>must cite either federal or state case law that engages in a federal constitutional analysis</u>.'" Respondent's Motion, at 6, Dkt. 29, (emphasis added here).  It is the last part of the statement of the Ninth Circuit in <u>Fields v. Waddington</u>, 401 F.3d 1018, 1020, 1021 (9th Cir. 2005), quoted by the Respondent, which is ignored in the Respondent's analysis of the Petition for Hearing filed by Ms. Welton's attorneys in the Alaska Supreme Court

and in its subsequent reliance on the earlier case of Galvin v. Alaska Dept. of Corrections, 397 F.3d 1198 (9th Cir. 2005).

**II. MS. WELTON RAISES FEDERAL CLAIMS IN HER STATE PETITION FOR HEARING PURSUANT TO THE FIELDS STANDARD.**

In the Petition for Hearing to the Alaska Supreme Court, Ms. Welton's attorneys argued that the omission of her trial attorney in not impeaching an important state witness using a prior inconsistent statement could not be deemed competent or non-prejudicial because it was made out of ignorance of the existence of the statement. [Exh.1 Petition for Hearing, at 5; also see, Amended Petition, Ground 1, at Dkt 22, reproduced as an Appendix to this Opposition].

In the Petition for Hearing before the Alaska Supreme Court, which challenged the objective reasonableness of the findings of the trial court in the post-conviction proceedings, the Petitioner cited to Jones v. State, 759 P.2d 558, 569 (Alaska App. 1988) twice, at page 5, fn. 5 and 6 – both to the specific page 569 of the Opinion. [Exh.1]² At page 569 of Jones, the court stated, "Of course, a mistake made out of ignorance rather that from strategy cannot later be validated as being tactically defensible. " This citation by the state court, and specifically quoted at page 5 of Ms. Welton's Petition for Hearing, cited to "Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 2588-89, 91 L.Ed. 305 (1986).." , Jones, 759 P.2d at 569. This quotation by Ms. Weltons attorneys in the Petition for Hearing to

---
² Pursuant to style accepted by Alaska courts all citations in the Petition for Hearing were made in footnotes.

Alaska's highest court followed a direct quote attributed to the U.S. Supreme Court, and was immediately following the state court's analysis of the similar standards for incompetence of counsel as found in Strickland v. Washington, 466 U.S. 668 (1984). Jones, 759 P.2d 568.  The Alaska court in Jones, specifically adopts Strickland standards for distinguishing tactical decisions and decisions made due to incompetence or ignorance – the gravamen of the claim in Ground 1 [Dkt. 22}, and previously Ground 1 before the Alaska Supreme Court in Ms. Welton's Petition for Hearing before the Alaska Supreme Court. [Respondent's Exh. 1, Petition for Hearing, at 1-2].

The reliance and use of Federal precedent is also clearly present at page 7 of the Petition for Hearing [Exh. 1 to Respondent's Motion] where Ms. Welton's attorneys cite to Wiggins v. Smith, 539 U.S. 510, 535 (2003) for the proposition that the state trial court and Court of Appeals had not followed the federal standard in determining what is objectively unreasonable in the context of a finding of no ineffective assistance of counsel.  This citation comes at the end of a three page discussion in the Petition for Hearing and the summing up of the argument regarding not finding incompetence based on the ignorance of trial counsel to the existence of a prior inconsistent statement by the trial court and the Court of Appeals.  The citation to Wiggins is exactly relevant to the state of the federal law under Strickland as to whether the failure to know of or use impeachment information by a defense attorney during the testimony of an important state witness was incompetent.

In the Respondent's motion it is stated that Ms. Welton "relied solely" on state constitutional law relating to ineffectiveness. What is clear from these specific citations to Federal and U.S. Supreme Court cases, directly relevant to Ground 1 in the Petition here, and relevant to the same issue raised in the Petition for Hearing at the Alaska Supreme Court, is that Ms. Welton complied with the standards for exhaustion as stated in <u>Fields v. Waddington</u>, 401 F.3d 1018, 1020, 1021 (9th Cir. 2005). Petitioner was required to "<u>cite either federal or state case law that engages in a federal constitutional analysis</u>.'" <u>Fields</u>, <u>Id</u>., Respondent's Motion, at 6, Dkt. 29, (emphasis added here). That is exactly what Ms. Welton's attorney did in the Petition for Hearing before the Supreme Court of Alaska.

This proposition was also clear to the State of Alaska when it responded to the Petition for Hearing when arguing that the trial courts findings were "objectively" reasonable. The state argued that the overlooking of a statement was not necessarily incompetent citing to <u>Jones v. State</u>, but also to an Federal ineffective assistance case of <u>United States v. DeCoster</u>, 624 F.2d 196, 211 (D.C. Cir. 1976).

Based on the record of the specific arguments, citations to specific Federal precedent supporting state law precedent based on Federal Constitutional analysis, Ms. Welton raised and exhausted her state court remedies in this case.[3]

---

[3] It should be noted that "Ground 1" in the present Petition for Habeas Corpus (2254) is the same as Ground 1 in the Petition for Hearing which specifically relies on the above Federal citations and the Federal Constitutional analysis as contained in State cases. A separate Ground III was raised in the Petition for Hearing under the State standard of <u>Risher v. State</u>, 523 P.2d 421 (Alaska 1974) is separately pleaded in the Petition for Hearing. Respondent's Exh.1, at page 2.

## III. FIELDS V. WADDINGTON CONTROLS THIS CASE, AND GALVIN V. AK. DOC IS DISTINGUISHABLE FROM THIS CASE

As stated above, Ms. Welton cited to and argued Federal Constitutional analysis as contained in State law precedent and U.S. Supreme Court cases in her Petition for Hearing. Also, it is admitted by the Respondent in its motion, at page 8, that Ms. Welton argued both the Sixth Amendment to the Constitution of the United States and federal law at both the trial and Court of Appeals stage of litigation in regard to Ground 1 [see, Appendix at end of this memorandum]. In the face of numerous citations to state authority utilizing Federal Constitutional analyis, (Jones v. State, 759 P.2d 448 (Ak. App. 1988); Arnold v. State, 685 P.2d 1261 (Ak. App. 1984); State v. Simpson, 946 P.2d 890 (Ak. App. 1997); and Burton v. State, 180 P.3d 964 (Ak. App. 2008) – all of which cite to and use Federal Constitutional analysis of Strickland v. Washington, supra., that the standards for exhaustion recited in Fields, 401 F.3d 1018-21 should be used to decide exhaustion here, and not that the unique holding of earlier case of Galvin v. Ak. DOC, 397 F.3d at 1201. The reliance by the Respondent on Galvin is misplaced.

First, opposite of the representation of the Respondent, Galvin did not raise the Federal Constitutional analysis of numerous state cases as Welton did here. The Galvin court outlined the limited nature of federal citations in Galvin. Galvin only mentioned one state case dealing with ineffective assistance of counsel once in her intermediate appellate brief, and that was on a collateral issue regarding advice on

withdraw of plea. That case, Risher v. State, 523 P.2d 421 (Alaska 1974) did not include Constitutional analysis of Federal precedent of Strickland (decided 10 years before) and was cited in connection with a collateral issue. Galvin, 397 F.3d at 1205. In Galvin, the Petition for Hearing to the Alaska Supreme Court did not even mention Richer or any Federal Constitutional analysis. *Id. 1204.*

Here, at the Court of Appeals, at the trial court, and then at the Supreme Court of Alaska, Ms. Welton cited to Federal Constitutional analysis in State cases; specifically, citing to specific sections discussing the issue at hand – ignorance of an attorney to facts as not being strategy or tactics. In this case, unlike Galvin, the differences in the standard for ineffective assistance between Alaska and the Federal precedent [Risher v. Strickland] are not important in determining whether the actions of the attorney in this case were "tactical" or based on ignorance of his case. In Galvin, Alaska law was better on the issue of advice required for a change of plea, and Federal precedent was much weaker – giving rise to the advantage of arguing state law. Here, law on the finding that attorney ignorance can be labeled as "tactical" is strong in the Federal law – hence the citations to particular sections of Jones v. State, citing to Kimmelman v. Morrison, 106 S.Ct. at 2588-89, and citation directly to the ineffective assistance case of Wiggins v. Smith, 539 U.S. 510, 535 (2003) for the same propositions of 6th Amendment law.[4]

In this case, unlike Galvin, there is no reason to believe that the Petitioner before the Alaska Supreme Court sought to avoid review under the Strickland v.

---

[4] Note, that every key number in Wiggins v. Smith, cites to the 6th Amendment to the Constitution of the United States.

Washington standard for ineffective assistance of counsel, or sought to avoid the holdings of Kimmelman or Wiggins. Further, any finding of "tactical" reasons for the trial counsel's omission was judged upon the same standard of objective unreasonableness, given the admissions by trial counsel of ignorance of the prior inconsistent statement.

In the recent case of Harrington v. Richter, 131 S.Ct 770, 784 (2011), Justice Kennedy, speaking for the Court, gave a primer in habeas corpus law when the court is faced with a denial of a petition for hearing (without opinion or reasoning) by a State Supreme Court when reviewing a case for Constitutional error filed under 2254(d) [upon which Ground 1 is filed]:[5]

> When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits within the meaning of the Antiterrorism and Effective Death Penalty Act.

131 S.Ct. at 774.

Here, there is no reason to presume that the Alaska Supreme Court, when informed in the Petition for Hearing that Ms. Welton was seeking the reversal of the Court of Appeals Opinion regarding claims of ineffective assistance of counsel, citing specifically to Federal Constitutional analysis and Federal law in regard to what was termed an unreasonable finding of "tactics" based on ignorance, did not consider the Strickland v. Washington standards for ineffective assistance before summarily

---

[5] While the Harrington case is not dispositive as to exhaustion, but as to whether the Alaska Supreme Court decided the case on both the State and Federal standard for ineffective assistance, the Court states that such a decision on the merits should be presumed on issues dealing with 28 USC 2254(d) "unreasonable determination" of facts or application of law.

denying the petition for hearing. Accordingly, this is a case in which the Petitioner has exhausted her state court remedies as to Ground 1 of the Amended Petition for Habeas Corpus. [Dkt 22]

## IV. CONCLUSION

The state courts of Alaska were fairly informed of the federal issues in Ms. Welton's case. Specifically, the Alaska Supreme Court was informed through specific citations and arguments regarding Ground 1 in the Petition for Hearing filed in Ms Welton's post-conviction case. Accordingly, the motion to dismiss this "mixed petition" should be denied and this court should now consider a motion for stay of this case until such time that the unexhausted claims are litigated in Alaska state Courts.

DATED this 3rd day of July, 2013.

Ashton and Dewey, Lawyers,

s/Willliam F. Dewey
William F. Dewey
1150 P Street
Anchorage, Alaska 99501
(907) 272-3740
deweyfred81@hotmail.com
AK Bar No. 8209089

This opposition was served by electronic means on Diane Wendlandt, OSPA, attorney for Respondent on this 3rd day of July, 2013 by William Dewey, CJA Attorney for Ms. Welton.

**APPENDIX TO OPPOSITION: Statement of Ground One from Amended Petition for 2254 Relief [contained on pages 11-15, Docket 22]:**

In the 04 post-conviction relief action, its appeal, and in the Petition for Hearing denied in July of 2011, Ms. Welton argued that her attorneys denied her right to effective assistance of counsel, denying her rights pursuant to both the Alaska Constitution and the Constitution of the United States by not confronting the State witness, Jeremiah Welton on his false testimony on direct that he never used any sleep aid. The judge found in that first PCR case:

> The second issue raised by Ms. Welton is more troubling. One of the key pieces of evidence against Ms. Welton was the fact that sleeping drugs were found in the boys' drinks. An equally key element of her defense was that the boys were recreational users of drugs, and of sleeping pills in particular. Jeremiah testified on direct that he had used marijuana consistently prior to the fire, that he tried other drugs, and that he never tried "sleeping aids". Tr. 1622. Mr. Heath went into Jeremiah's drug use in great detail on cross-examination, quoting extensively from his emails in which he said he had taken a wide variety of other drugs, including PCP – in one email, [6] he

---
[6] These are actually references to "chatrooms" which were allowed into evidence as prior statements once identified by his online name "Papa Roach". [Tr. 1657]

said he was hallucinating while typing. Jeremiah claimed that he actually had not taken all of those drugs, but was lying to his friends.

Mr. Heath did not, however, ask Jeremiah about one very important admission. Jeremiah was interviewed by Investigator Wallner on a number of occasions. In one interview, in response to a question as to whether his mother took sleeping pills, Jeremiah responded:

"Nope. I don't know anything of it. She'd never take sleeping pills. She tells me and Sam 'cause I remember I used to take sleeping pills when I had soccer practice or…" [Quoting from Pl. Exh. 14. at Evidentiary Hearing

Finding by Trial Court, at 24 in 3PA-04-836 CI.

The court found in the First PCR proceedings, based on the testimony at the evidentiary hearing, this was vitally important testimony which could have be used to bolster the theory that the boys, not Ms. Welton, was the source of any Sleepinol in the boys drinks that night. Findings at 24-27.

The court found: Mr. Davenport (Ms. Welton's trial attorney) did not recall seeing this part of the record; Mr. Heath did not recall it either, nor did the investigators. They all admitted on the record of the evidentiary hearing, correctly, it would have been helpful to have challenged Jeremiah with this admission. The court found, "Given the fact that

none of the defense team remembered the admission, it is likely that they all simply overlooked it in the thousands of pages of discovery that had been provided." Ruling at 27, Exhibit C-1, attached hereto.

However, after finding that it was most likely that the trial attorneys did not know of the statement, the court then found credible Mr. Heath's testimony that he had a witness, Luke Dubber, and he decided to not ask Jeremiah about the sleeping pills during his cross examination because he did not want to "flag this issue to the state's attention." The trial court examining this omission by Mr. Heath stated Mr. Dubber was known to the state, but if he flagged the issue, the State might interview Mr. Dubber and steal the defense's fire. Accordingly, the court reviewing ineffective assistance found this decision to be "tactical" and ruled that "while a close call [the decision to not use the prior inconsistent statement to impeach perjury in direct] even under the clear and convincing standard, the court finds that the failure to ask Jeremiah about this admission was not incompetent." Amended Finding of Fact and Conclusions of Law, at 24, attached hereto as Exhibit C-1, decided on May 27, 2008. This finding was affirmed in <u>Welton v. State</u>, Court of Appeals for State of Alaska, Memorandum Opinion, #5703, decided on May 25, 2011, at 20-23 for the same reasons based on a finding of tactical decision using data that the attorneys were unaware.

### a. PURSUANT TO 28 U.S.C. 2254 THIS COURT SHOULD GRANT RELIEF AND FIND INEFFECTIVE ASSISTANCE OF COUNSEL FOR DENIAL OF MS. WELTON'S 6TH AMENDMENT

### RIGHT TO COUNEL, DENIAL OF DUE PROCESS AND EQUAL PROTECTION.

While this court is normally required to give great deference to the State Court record and findings, see, <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388 (2011) and <u>Stokley v. Ryan</u>, 659 F.3d 802, 807-08 (9th Cir. 2011), here the findings of the trial court, and the appellate courts in this case, on this issue, are "objectively unreasonable" and deserve no deference.

The actual record of the trial shows that just prior to the examination of Jeremiah Welton, this issue was revealed and flagged on the record by Mr. Heath. He argued that the lie told by Jeremiah Welton (that he never took sleep aids) went to the "crux of their case", and argued strenuously that the statement by Jeremiah was "false". Mr. Heath, Ms. Welton's attorney, contrary to his explanation after the fact, stated – just prior to the examination of Jeremiah Welton:

> Again, we believe that that was an absolutely false statement. We will be presenting as an offer of proof to the court testimony from individuals who will confirm that he was not only using marijuana and beer, he was using PCP, and <u>we have an individual who'll confirm that he was using and abusing diphenhydramine…</u>
> Now, Mr. Kalytiak may say that the use of PCP and the use of diphenhydramine is a collateral issue, but it's our opinion that it's the key issue in this case. .. As we said in our opening statements, we're not contesting that they had

> diphendydramine in their system, we're contesting where it came from… we will hear testimony in our case in chief of individuals—or an individual who saw Jeremiah Welton abusing diphenhydramine.[7]

Tr. of Trial, Greg Heath speaking, at 1488-89, just prior to Jeremiah taking the stand. <u>Also see</u>, Opening Statement of George Davenport, at 812-13, stating they had a witness.

The fact is the finding of no ineffective assistance by Mr. Heath by Judge Smith and affirmed in the Alaska Appellate Court, by not crossing Jeremiah Welton as to his admission due to a tactical decision to not "flag the issue of diphenhydramine abuse" and keep his known witness secret was objectively unreasonable and was not supported by the record. This failure to rule based on real facts, rather than a made up justification for a serious error in a close case amounts to unreasonable error by the state courts and clear evidence of ineffective assistance of counsel which requires the vacation of the conviction and sentence in this matter.

---

[7] At trial this substance was made equivalent to Sleepinol.